## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| STEPHEN C. WRIGHT, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. CIV-22-145-RAW |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |
| STEPHEN WRIGHT and the Estate of | ) | Case No. CIV-22-166-RAW |
| MARY B. JONES, | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PATRICK L. WALLACE, et al., | ) | |
| Defendants. | ) | |

## OPINION AND ORDER[1]

Before the court are two (2) motions to dismiss two (2) separate but related lawsuits filed by Plaintiff Stephen C. Wright ("Plaintiff"). Wallace Doc. 8; Gov. Doc. 10. Also before the court is a motion to remand one of Plaintiff's two lawsuits. Wallace Doc. 9.

First, in Case No. 22-CV-145-RAW, Defendant United States of America ("Government") argues for dismissal of Plaintiff's claims against the Government for lack of standing pursuant to FED. R. CIV. P. 12(b)(1) and for failure to state a claim upon which relief can be granted pursuant to FED. R. CIV. P. 12(b)(6). Gov. Doc. 10. Second, in Case No. 22-CV-166-RAW, Defendants Patrick and Pamela Wallace ("Wallaces") argue for dismissal of Plaintiff's claims against the

---

[1] On January 5, 2023, the court consolidated related cases filed by Plaintiff for pretrial proceedings including: (i) *Stephen C. Wright v. Patrick L. Wallace and Pamela K. Wallace*, Case No. 22-CV-166-RAW and (ii) *Stephen C. Wright v. United States of America*, Case No. 22-CV-145-RAW. Dkt. Nos. 24, 32.

Wallaces for failure to state a claim upon which relief can be granted pursuant to FED. R. CIV. P. 12(b)(6). Wallace Doc. 8. Plaintiff's motion to remand is filed in this latter case. Wallace Doc. 9.

All three motions are fully briefed. For the reasons stated, Plaintiff's motion to remand [Wallace Doc. 9] is DENIED. The Government's and the Wallace's respective motions to dismiss [Wallace Doc. 8; Gov. Doc. 10] are each GRANTED.

## BACKGROUND AND PROCEDURAL POSTURE

Plaintiff's lawsuits stem from an alleged allotment of land from the Choctaw Nation, one of the Five Civilized Tribes, to Mary B. Jones, a minor, pursuant to an Act of Congress—The Act of May 27, 1908, 35 Stat. 312 (the "1908 Act"). Wallace Doc. 2, Ex. 2 at ¶ 8; Gov. Doc. 5 at ¶¶ 5, 8. The land was available for allotment by the Choctaw Nation to individual tribal members as a result of the Dawes Commission. Gov. Doc. 12 at p. 3 ("[B]y the act of March 3, 1893, the consent of the United States was expressly given to the allotment of these lands by the tribes to the individual members of the tribes."). Mary. B. Jones died in infancy on October 14, 1902, and said lands were purportedly allotted thereafter. Wallace Doc. 2, Ex. 2 at ¶ 7; Gov. Doc. 5 at ¶ 5.

Plaintiff alleges an array of ensuing wrongs, intentional and unintentional, by individuals and governmental entities alike. The court acknowledges this period's fraught history with respect to Native relations in the geographical area that composes the Eastern District of Oklahoma (and beyond). Yet Plaintiff's factual allegations with respect to Mary B. Jones and the land at issue are, to say the least, not altogether clear.

For example, Plaintiff alleges vaguely that in 1908, one "Mr. Hall" paid Ellen and Joseph Hampton to "touch the pen"[2] on an affidavit of heirship and warranty deeds regarding the land,

---

[2] "The touching of the pen is a mere symbolic act, serving no other purpose than to show consent to the making of the mark. It is sufficient, when it appears that the mark was made in the presence of the party, whose signature it purports to be, with his knowledge and consent." *In re Deshotels' Estate*, 153 La. 1096, 1097, 97 Sp. 203 (1923).

and that in 1918 the affidavit and warranty deeds were found to be fraudulent. Gov. Doc. 12 at 1. Later, in 1928, "[a]n order issued [that] validated the allotments of Mary B. Jones in cause 3480 heard before the United States District Court for the Eastern District of Oklahoma . . . ." Gov. Doc. 5 at ¶ 7. The order specifically "identified and decreed that Solomon Jones, full blood Choctaw, was heir to Mary B. Jones and . . . established equity of surplus lands by decree of at least 50%." Gov. Doc. 12 at p. 2. Plaintiff alleges that he is a descendent of Solomon Jones and, by extension, Mary B. Jones. *Id.* A significant gap in the timeline of Plaintiff's factual allegations follows.

The Wallaces purchased the property at issue over a quarter-century ago, on or about June 27, 1997 [Wallace Doc. 8, Ex. 1], and have resided at the property to the present date. The Wallaces commissioned a title report in advance of their purchase of the property, which revealed that in 1941 the Carter County District Court quieted title in the property, thus enabling the title holders to thereafter convey the property cleanly and clear of defects. *Id.* at Ex. 2. Plaintiff nevertheless claims that the Wallaces' title is flawed because the chain of title does not account for Mary B. Jones. Wallace Doc. 2, Ex. 2. Plaintiff also avers that the Government violated a trust duty to Mary B. Jones by failing to place the land in restrictive status. Gov. Doc. 5.

I.     *Wright v. United States of America* **(E.D. Okla. Case No. 22-CV-145-RAW)**

Plaintiff initiated this lawsuit on May 11, 2022, asserting a single cause of action against the Government for "unintentional negligence." Gov. Doc. 2. The operative pleading for the purpose of the Government's motion to dismiss is Plaintiff's Second Amended Complaint, filed May 16, 2022, which similarly asserts a single cause of action against the Government for "unintentional negligence." Gov. Doc. 5.

Plaintiff purports to be the "heir-in-law to Mary B. Jones," a full blood Native American minor, deceased October 14, 1902. *Id.* at ¶¶ 1, 5. Plaintiff alleges that the Government owed a

"duty of care to minor allottees such as Mary B. Jones," and that the Government breached said duty by failing to place the land held by Ms. Jones's estate in restrictive status following her death. *Id.* ¶ at 8. Plaintiff requests that the Government be "ordered to place the lands allotted to Mary B. Jones, minor full blood Choctaw . . . into restrictive status and order the [Government] to defend and protect the lands held by [the] estate of Mary B. Jones as afforded by law . . . ." *Id.* at ¶ 11.

The Government argues that Plaintiff's lawsuit should be dismissed for multiple reasons, all falling under the umbrellas of lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. Gov. Doc. 10 at 2. More specifically, the Government contends Plaintiff's lawsuit should be dismissed because (i) Plaintiff lacks standing to bring suit for an alleged injury suffered by an ancestor, (ii) Plaintiff failed to exhaust administrative remedies as required by the Federal Tort Claims Act ("FTCA"), (iii) Plaintiff in fact seeks money damages and thus his claims are not sustainable in district court under and Administrative Procedures Act ("APA"), (iv) the applicable statute of limitations for Plaintiff's tort claim as provided by the FTCA has expired, and (v) the Government owed no trust duty to Plaintiff's ancestor because the statute under which Plaintiff purports to bring his breach of trust claim was passed in 1908 and applied only to living minors, whereas Mary B. Jones died in 1902. Gov. Doc. 10.

## II.    *Wright v. Wallace* (E.D. Okla. Case No. 22-CV-166)

Separately, on November 29, 2021, Plaintiff filed a quiet title action against the Wallaces and others in the District Court for Carter County, State of Oklahoma.[3] On April 22, 2022, Plaintiff filed an Amended Complaint[4] against only the Wallaces. Wallace Doc. 2, Ex. 2. Plaintiff filed the quiet title action on behalf of himself as well as the "Estate of Mary B. Jones (minor)." *Id.* at ¶ 1.

---

[3] *Stephen Christopher Wright, Estate of Mary B. Jones v. Patrick L. Wallace and Pamela K. Wallace*, Carter County Case No. CV-2021-156.

[4] Plaintiff's pleading was styled a Petition in conformity with state court practice and procedure.

4

Plaintiff's allegations with respect to the Wallaces, like those against the Government, are based on the allotment of the same plot of land to Mary B. Jones, a Native American minor deceased in 1902. *Id*. at ¶¶ 7, 12. Plaintiff claims that the Wallaces, who reside at the property in question, do not have a clean chain of title because it does not account for Mary B. Jones. *Id*. at ¶ 8.

The Wallaces removed Plaintiff's lawsuit to federal court, where it was assigned to the undersigned and recaptioned. Wallace Doc. 2. In their removal papers, the Wallaces assert that this court has original jurisdiction over Plaintiff's lawsuit because it involves federal issues and because federal statutes explicitly establish federal subject matter jurisdiction. *Id*. at ¶¶ 5-7 (citing 28 U.S.C. § 1353 and 25 U.S.C. § 1354). Plaintiff disagrees. Gov. Doc. 9. Specifically, in his motion for remand, Plaintiff asserts that actions regarding the allotment of land to members of the Five Civilized Tribes (such as this case) are excluded from federal jurisdiction pursuant to 25 U.S.C. §§ 345, 353, 355 & 1331. *Id*. at 2. Moreover, Plaintiff argues that this lawsuit is not removeable under 28 U.S.C. § 1331 because it involves "no claims . . . arising under the Constitution, laws, or treaties of the United States." *Id*. at 1.

The Wallaces raise additional arguments in their reply brief, namely: removal is appropriate under the circumstances to protect against forum shopping and claim splitting, and to prevent the waste of judicial resources and potential inconsistent outcomes. Wallace Doc. 15 at 7. The Wallaces have also filed a motion to dismiss in the event the court resolves Plaintiff's remand motion in their favor. Wallace Doc. 8. In their dismissal motion, the Wallaces argue that Plaintiff's lawsuit should be dismissed because it is barred by the doctrine of res judicata and because the applicable statute of limitations has run. *Id*. at 2-3.

**ANALYSIS**

I.     **Plaintiff's Motion to Remand (E.D. Okla. Case No. 22-CV-166)**

The court deems it appropriate to first resolve Plaintiff's motion to remand his lawsuit against the Wallaces to Carter County District Court—if remand is appropriate, the Wallaces' dismissal motion is moot. The Wallaces assert that removal is appropriate based on the existence of federal question jurisdiction. 28 U.S.C. § 1331. The Wallaces allege that Plaintiff's Amended Complaint "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Wallace Doc. 2 at ¶ 5 (quoting *Gunn v. Minton*, 568 U.S. 251, 158 (2013)).

Plaintiff's motion to remand is sparse on argument or analysis. Wallace Doc. 9. First, Plaintiff baldly asserts that 28 U.S.C. § 1331 is not implicated here because "there are no claims within the subject matter of this complaint containing actions arising under the Constitution,[5] laws, or treaties of the United States." *Id*. Plaintiff continues that "[t]he Defendants are not named in any treaty nor are questions of federal law contained within the subject matter of this complaint." *Id*.

The court categorically rejects the notion that federal question jurisdiction is lacking because these specific defendants "are not named in any treaty." It is also indisputable that Plaintiff's lawsuit against the Wallaces arises under the law(s) and/or treaties of the United States, which Plaintiff expressly acknowledges by reference to section 6 of the 1908 Act. Wallace Doc. 2, Ex. 2 at ¶ 8. The court finds that there is no colorable remand argument for lack of federal question jurisdiction under 28 U.S.C. § 1331. ("This court has original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

---

[5] Although not determinative here, the court notes that the United States Constitution, at Art. I, sec. 8, cl. 3, empowered the federal government to "regulate Commerce with foreign Nations, and among the several States, *and with the Indian Tribes*." (emphasis added).

Plaintiff also claims that 25 U.S.C. § 345 and its companion statute, 28 U.S.C. § 1353, "are not applicable to the subject matter of this complaint" because Mary B. Jones was a member of the Five Civilized tribes. *Id*. at 1. This issue is less straightforward. Unfortunately, here too, Plaintiff merely provides a conclusory statement that these statutes preclude federal court jurisdiction, and then pastes the language of the statutes into his brief. Wallace Doc. 9.

25 U.S.C. § 345 provides in full:

> All persons who are in whole or in part of Indian blood or descent who are entitled to an allotment of land under any law of Congress, or who claim to be so entitled to land under any allotment Act or under any grant made by Congress, or who claim to have been unlawfully denied or excluded from any allotment or any parcel of land to which they claim to be lawfully entitled by virtue of any Act of Congress, may commence and prosecute or defend any action, suit, or proceeding in relation to their right thereto in the proper district court of the United States; and said district courts are given jurisdiction to try and determine any action, suit, or proceeding arising within their respective jurisdictions involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any law or treaty (and in said suit the parties thereto shall be the claimant as plaintiff and the United States as party defendant); and the judgment or decree of any such court in favor of any claimant to an allotment of land shall have the same effect, when properly certified to the Secretary of the Interior, as if such allotment had been allowed and approved by him, **but this provision shall not apply to any lands now held by either of the Five Civilized Tribes**, nor to any of the lands within the Quapaw Indian Agency: *Provided,* That the right of appeal shall be allowed to either party as in other cases.

(emphasis added).

Separately, 28 U.S.C. § 1353, the "recodification" of § 345,[6] provides:

> The district courts shall have original jurisdiction of any civil action involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any Act of Congress or treaty.
>
> ***
>
> The judgment in favor of any claimant to an allotment of land shall have the same effect, when properly certified to the Secretary of the Interior, as if such allotment had been allowed and approved by him; **but this provision shall not apply to any**

---

[6] *Coleman v. Bureau of Indian Affairs*, 546 F. Supp. 515, 517 (1982)

7

**lands held on or before December 21, 1911, by either of the Five Civilized Tribes**, the Osage Nation of Indians, nor to any of the lands within the Quapaw Indian Agency.

(emphasis added).

As noted above, Plaintiff argues without explanation or analysis that § 345 and § 1353 "are not applicable to the subject matter of this complaint." Wallace Doc. 9. The court interprets Plaintiff as arguing that the bold portions of the above statutes operate to remove cases such as Plaintiff's from the original jurisdiction that this court otherwise possesses.[7] The court's interpretation is informed in part by the fact that Plaintiff bolds similar portions of said statutes in his remand motion, which, again, contains virtually zero argument or analysis. *Id*.

After undertaking its own independent analysis, the court is not convinced that these statutes require remand of Plaintiff's lawsuit to Oklahoma state court. Federal district courts plainly have jurisdiction over claims arising under the laws and treaties of the United States. 28 U.S.C. § 1311. Moreover, the statutes on which Plaintiff relies for his remand argument explicitly provide jurisdiction to district courts over suits involving the allotment of land under any law or treaty to persons with Indian blood. *See* 25 U.S.C. § 345, 28 U.S.C. § 1353.

Neither party cites, and the court could not locate, any published opinion remanding or declining to remand to state court a lawsuit by an Indian allottee or heir concerning an allotment on the grounds that federal district courts lacked jurisdiction to hear such suits under 25 U.S.C. § 345 or 28 U.S.C. § 1353. However, both the United States District Court for the Eastern District

---

[7] *c.f.* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"); 25 U.S.C. § 345 (district courts have jurisdiction "to try and determine any action, suit, or proceeding arising within their respective jurisdictions involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any law or treaty"); 28 U.S.C. § 1353 ("The district courts shall have original jurisdiction of any civil action involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any Act of Congress or treaty").

of Oklahoma and the Tenth Circuit Court of Appeals have heard and decided cases pertaining to an allotment of land to a member of one of the Five Civilized Tribes under the 1908 Act—the federal statute upon which Plaintiff relies in this case [Wallace Doc. 2, Ex. 2 at ¶ 8]. *See Glenn v. Lewis*, 105 F.2d 398 (10th Cir. 1939).

The most illuminating case the court has located on the issue is *Coleman v. U.S. Bureau of Indian Affairs*, 546 F. Supp. 515 (N.D. Ill. Sept. 9, 1982), *aff'd, Coleman v. Bureau of Indian Affairs*, 715 F.2d 1156 (7th Cir. 1983). The plaintiffs in *Coleman*, "heirs and descendants of Creek Indians," sued the United States Bureau of Indian Affairs ("BIA") for breach of fiduciary duty for failing to sell their ancestors' "land advantageously or selling it at artificially low prices." 546 F. Supp. at 516. The BIA moved to dismiss for lack of subject matter jurisdiction. *Id.* The *Coleman* court first noted that that 28 U.S.C. § 1331 "does not provide an independent jurisdictional basis but predicates jurisdiction on another source: a federal law, treaty or the Constitution, from which the claim arises." *Id.* at 517. For the *Coleman* plaintiffs, that other source was the "Act of March 1, 1901, 31 Stat. 861, providing for allotments to Creek Indians . . . ." *Id.*

Critically, "The Act of 1901 . . . contain[ed] a specific remedy provision for disputes arising thereunder which [was] contradictory to § 1331's jurisdictional grant." *Id.* at 518. The Act of 1901 specifically provided: "Any other claim which the Creek Nation may have against the United States may be prosecuted in the Court of Claims of the Unites States . . . ." *Id.*[8] The *Coleman* court granted the BIA's motion to dismiss, concluding: "It is only by reading §§ 1353 and 345 *with the*

---

[8] On appeal the Seventh Circuit added that "Section 24 of the Indian Claims Commission Act . . . extended the jurisdiction of the Court of Claims to 'any claim against the United States occurring after the date of the approval of this Act in favor of any Indian tribe, band, *or other identifiable group of American Indians* . . . .'" *Coleman v. Bureau of Indian Affairs*, 715 F.2d 1156, 1162 (7th Cir. 1983) (emphasis in original).

*Act of 1901* that Congress' intention becomes clear: claims relating to allotments of land to the Five Civilized Tribes should proceed in the Court of Claims." *Id*. (emphasis added).

Here, by contrast, the "source" of jurisdiction under 28 U.S.C. § 1331 is the 1908 Act, which contains no such specific remedy provision identifying the Court of Claims. Wallace Doc. 2, Ex. 2 at ¶ 8. Section 6 of the 1908 Act, which Plaintiff specifically refers to, provides in part that "persons and property of minor allottees of the Five Civilized Tribes shall, except as otherwise specifically provided by law, be subject to the jurisdiction of the probate courts of the State of Oklahoma." *Id*. However, the Plaintiff in this case is concurrently the Petitioner in a separate case concerning Mary B. Jones in Oklahoma state probate court.[9] Plaintiff brought this claim against the Wallaces separate and apart from the pending probate, and the judge in the probate has stayed all proceedings "until such time as the United States District Court, or some other Court of competent jurisdiction, quiets title to the contested lands."[10]

Plaintiff's lawsuit against the Wallaces, like his companion lawsuit filed against the Government in federal court, plainly pertains to the historical allotment of land to an Indian minor and arises under federal law and federal treaties. Plaintiff fails to explain, let alone establish, why jurisdiction is lacking by virtue of either 25 U.S.C. § 345 or 28 U.S.C. § 1353, or why remand this action to Oklahoma state district court is proper.

The court is also skeptical of Plaintiff's inconsistent jurisdictional positions taken in the two cases consolidated herein, both of which concern the same plot of land and basic facts, and both of which rely on the 1908 Act. Indeed, in Plaintiff's suit against the Government (22-CV-145-RAW), Plaintiff opposes dismissal by arguing that this court *has subject matter jurisdiction*

---

[9] *In the Matter of the Estate of Mary B. Jones*, Carter County Case No. PB-2021-176.
[10] *See* July 18, 2022, Order, attached hereto as Exhibit "1."

to hear Plaintiff's claims arising under the same facts and federal law. Dkt. No. 12 at 13.[11] (Plaintiff specifically argues that the "issue laid out in the complaint is inseparable from quieting lands now held in trust by the United States and this is the appropriate jurisdiction and venue for questions arising and affecting those lands physically situated in southeast Oklahoma.").[12]

The count finds that it has original jurisdiction over Plaintiff's claim against the Wallaces under 28 U.S.C. § 1331. Plaintiff's motion to remand is therefore DENIED.

## II.   Motions to Dismiss

### a.   Standards of Review

The purpose of a motion to dismiss under FED. R. CIV. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 680. Second, the court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679.

---

[11] Plaintiff does not include page or paragraph numbers in Dkt. No. 12 (22-CV-145-RAW).

[12] In the same vein, the court has serious concerns about the risk of inconsistent or outright conflicting outcomes should this lawsuit be remanded to state court while its companion case remains in federal court. It is significant that Plaintiff filed his companion case against the Government in federal court in the first instance.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1192. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id*. (quotation marks and citation omitted).

Additionally, FED. R. CIV. P. 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction." Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of

limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co*., 495 F.2d 906, 909 (10th Cir. 1974). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere [conclusory] allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso*, 495 F.2d at 909. Accordingly, Plaintiff in this case bears the burden of establishing that this court has jurisdiction to hear his claims.[13]

### b. The Wallaces' Motion to Dismiss (22-CV-166-RAW)

The Wallaces argue that dismissal of Plaintiff's quiet title action against them is appropriate by application of the doctrine or claim preclusion[14] and because the applicable statute of limitations has long expired. Wallace Doc. 8.

The Wallaces first argument is that the 1941 Quiet Title Action [Wallace Doc. 8, Ex. 2], which quieted title in the land at issue in the Wallaces' predecessors in interest, was a final judgment that conclusively determined the true owner of the land. *Id*. at 2. Plaintiff's instant quiet title action, therefore, is an impermissible collateral attack on a valid, final judgment.

"Claim preclusion requires: (1) a judgment on the merits in the earlier action; (2) identity of the parties or their privies in both suits; and (3) identity of the cause of action in both suits."

---

[13] Plaintiff is proceeding *pro se*. The court construes liberally the pleadings of *pro se* litigants. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Although *pro se* pleadings are held to a less stringent standard than pleadings drafted by lawyers, a *pro se* litigant must "follow the same rules of procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).
[14] Although the Wallaces refer to "res judicata," for purposes of clarity the Tenth Circuit employs the term "claim preclusion." *Wilkes v. Wyoming Dept. of Employment Div. of Labor Standards*, 314 F.3d 501, 503-504, n. 1 (10th Cir. 2002).

*Yapp v. Excel Corp.*, 186 F.3d 1222, 1226 (10th Cir. 1999) (citing *King v. Union Oil Co. of Cal.*, 117 F.3d 443, 445 (10th Cir. 1997)). In the specific context of quiet title actions, the Oklahoma Supreme Court has explained:

> Public policy and the interest of litigants, as well as the soundness and practicability of our system of property titles and jurisprudence all require that there be an end to litigation and that matters once finally determined in a court of competent jurisdiction be not relitigated in an interminable succession of other actions.

*Woodrow v. Ewing*, 1953 OK 60, 263 P.2d 167, 172 (citing 30 Am.Jur. 910, § 165); *see also Home Dev. Co. v. Hankins*, 1945 OK 153, 159 P.2d 1013 ("The purpose of an action to quiet title, under the statute, is to determine who is the real owner of the property and to put to rest all adverse claims. In such an action all matters affecting the title of the parties thereto may be litigated and determined, and the judgment rendered therein is final and conclusive as against the parties thereto and their privies.").

Here, regarding the first element of claim preclusion, it is undisputed that the 1941 Quiet Title Action was a judgment on the merits. Wallace Doc. 8, Ex. 2. With respect to the second element, claim preclusion generally requires that the named parties in the first and second suits be identical. *Pelt v. Utah*, 539 F.3d 1271, 1281 (10th Cir. 2008). However, an exception applies where there is "privity" between the parties bound by the first suit and those named in the second. *Id*. "Privity requires, at a minimum, a substantial identity between the issues in controversy and showing the parties in the two actions are really and substantially in interest the same." *Lowell Staats Min. Co. v. Philadelphia Elec. Co.*, 878 F.2d 1271, 1275 (10th Cir. 1989).

Despite its long pedigree in the law, privity remains "an elusive concept." *Lenox MacLaren Surgical Corporation v. Medtronic, Inc.*, 847 F.3d 1221, 1240 (10th Cir. 2017) (quoting *In re L&S Indus., Inc.*, 989 F.2d 929, 932 (7th Cir. 1993)). For instance, the Tenth Circuit has recognized

14

"that no definition of privity can be automatically applied in all cases involving the doctrine of res judicata." *Pelt*, 539 F.3d at 1281.

However, the United States Supreme Court has recognized six general categories of nonparties that may nonetheless be precluded from subsequent litigation under the doctrine of claim preclusion. *Taylor v. Sturgell*, 553 U.S. 880, 893 (2008). "[N]onparty preclusion may be justified based on a variety of pre-existing substantive legal relationships between the person to be bound and a party to the judgment." *Id*. at 894 (citation omitted). Critically, "[q]ualifying relationships include, but are not limited to, preceding and succeeding owners of property, bailee and bailor, and assignee and assignor." These exceptions originated "as much from the needs of property law as from the values of preclusion by judgment." *Id*. (quoting 18A C. Wright, A. Miller, & E. Copper, Federal Practice and Procedure, § 4448, p. 329 (2d ed. 2002)). "[P]ersons holding successive interests in the same property or claim can preclude each other." *See* Wright & Miller, § 4448, p. 329.

The plaintiffs in the 1941 Quiet Title Action were the Wallaces' predecessors in interest, and title to the land in question was quieted in their favor. Wallace Doc. 8, Ex. 2. The defendants in the 1941 Quiet Title Action in included "the unknown heirs, executors, administrators, devisees, trustees, and assigns, immediate and remote, of Mary B. Jones, deceased." *Id*. Plaintiff explicitly alleges in this case that he is "heir to the estate of Mary B. Jones and has interest to title in the aforementioned land." Wallace Doc. 2, Ex. 2. As such, the court finds that privity exists between the parties to the 1941 Quiet Title Action and the instant quiet title action, and therefore the second element is satisfied. *Yapp*, 186 F.3d at 1226.

The third and final element required for finding that Plaintiff's instant quiet title action against the Wallaces is barred by the doctrine of claim preclusion is "identity of the cause of action

in both suits." *Id.* This element is clearly satisfied as both causes of action were/are to quiet title in the same piece of land. Plaintiff's instant quiet title action pertains to the "South Half of the Southeast Quarter of the Southeast Quarter of Section 7, Township 5 South, Range 2 East." Wallace Doc. 2, Ex. 2 at ¶ 12. By comparison, the 1941 Quiet Title Action quieted title to "[t]he East 18 acres of the S ½ of the SE ¼ of the SE ¼ of Sec. 7, Tns. 5 South, Rge 2 East, Carter County, Oklahoma." Wallace Doc. 8, Ex. 2.

Finding that Plaintiff's quiet title action against the Wallaces is barred by the doctrine of claim preclusion, the court need not conduct an analysis regarding the statute of limitations.[15] For the reasons stated hereinabove, the Wallaces' motion to dismiss is GRANTED.

### c. The Government's Motion to Dismiss (22-CV-145-RAW)

The Government advances a variety of arguments for dismissal of Plaintiff's claim against it for "unintentional negligence." Gov. Doc. 10. Plaintiff's response is detailed and dense in its description of Oklahoma state history, but scattered to the extent it seeks to counter the Government's arguments. Gov. Doc. 12. As an initial matter, the Government argues that Plaintiff lacks standing to bring his "unintentional negligence" claim and thus dismissal is proper under FED. R. CIV. P. 12(b)(1). Gov. Doc. 10 at 4. The court addresses constitutional standing first as a threshold issue.

Three (3) elements are necessary for Plaintiff to establish standing. First, Plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest that is concrete, particularized, and actual or imminent. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "Second, there must be a causal connection between the injury and the conduct complained of—

---

[15] Although not necessary to resolving the Wallaces' motion to dismiss (or the Government's), the court addresses the Wallaces' and the Government's respective arguments for dismissal based on the applicable statutes of limitations below. *See* p. 19, *infra*.

the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.'" *Id*. (quoting *Sierra Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41-42 (1976). Third, it must be "likely" as opposed to "speculative" that the injury will be redressed by a favorable decision. *Id*. at 561.

The Government argues that none of the three (3) elements required for standing are satisfied here. The court notes that failure of any one of the three elements is fatal to a finding of standing. *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (referring to the elements as "not mere pleading requirements but rather an indispensable part of the plaintiff's case" and explaining that "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation."). However, the court is also well aware that "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Id*. (quoting *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889 (1990)).

Affording Plaintiff's factual allegations the deference that it must, the court nonetheless finds that Plaintiff fails to satisfy the first element necessary for standing. Plaintiff cannot plausibly contend that he has suffered an "injury in fact," let alone an injury that is concrete, particularized, actual, or imminent. Indeed, Plaintiff's Second Amended Complaint is focused exclusively on purported to wrongs Mary B. Jones, who is not a party to this action. Gov. Doc. 5. Most significantly, Plaintiff cannot rely on an alleged injury to an ancestor in order to establish standing. *Tanner Brown v. Jewell*, 153 F. Supp. 3d 102, 110 (D.D.C. 2016) ("Courts have rejected the notion

that a plaintiff can suffer an injury for purposes or constitutional standing simply by virtue of an injury suffered by her ancestors."); *see also In re African-American Slave Descendants Litig.*, 471 F.3d 754, 759 (7th Cir. 2006) ("[T]here is a fatal disconnect between the victims and the plaintiffs. When a person is wronged he can seek redress, and if he wins, his descendants may benefit, but the wrong to the ancestor is not a wrong to the descendants.").

As Plaintiff's Second Amended Complaint fails to allege facts demonstrating a concrete, particularized, actual or imminent injury in fact, the court concludes that Plaintiff cannot meet the burden of establishing constitutional standing. Accordingly, the Government's motion to dismiss [Gov. Doc. 10] is GRANTED.

### d.   Applicable Statutes of Limitations.

Lastly, although resolution of these dismissal motions does not require addressing every argument advanced by the respective defendants, the court considers it proper to address the one argument common to the Wallaces and the Government: that Plaintiff's claims are barred by the applicable statutes of limitations.

First, the Wallaces argue that Oklahoma imposes a five (5) year statute of limitations on "action[s] for the recovery of real property sold by executors, administrators, or guardians, upon an order or judgment of a court directing such sale, brought by the heirs or devisees of the deceased person . . . ." OKLA. STAT. tit 12, § 93(2). Moreover, any other "action for the recovery of real property" must be brought "within fifteen (15) years." *Id.* at 94(4). These statutes of limitations plainly apply to Plaintiff's quiet title action against the Wallaces. *See Redbird v. Oklahoma Tax Comm'n*, 1997 OK 126, 947 P.2d 525, 527 ("Oklahoma state statutes of limitations appl[y] to restricted Indians of the Five Civilized tribes, their heirs, and grantees, with respect to causes of action involving allotted lands."). The court agrees with the Wallaces that Plaintiff's cause of

action against the Wallaces accrued, at the very latest, on the conclusion of the 1941 Quiet Title Action. As such, Plaintiff's lawsuit against the Wallaces is time barred by decades regardless of limitations period applies here.

Second, the Government asserts that Plaintiff's "unintentional negligence" claim sounds in tort and therefore triggers the Federal Tort Claims Act ("FTCA"). Gov. Doc. 10 at 9; *see also* Gov. Doc. 5 at ¶ 8 (alleging the Government breached a "duty of care . . . as a result of unintentional negligence."). The court agrees. The FTCA requires a potential plaintiff to present their tort claim "in writing to the appropriate Federal agency within two years after such claim accrues . . . ." 28 U.S.C. § 2401(b). In other words, Plaintiff is required to exhaust administrative remedies before bringing a tort claim in federal court. *Pipkin v. U.S. Postal Service*, 951 F.2d 272, 273 (10th Cir. 1991) ("[e]xhaustion of administrative remedies is a jurisdictional prerequisite to asserting claims under the FTCA."). Upon exhausting administrative remedies, "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a).

Plaintiff's Second Amended Complaint states vaguely that Plaintiff "has made every effort possible to correct the BIA record." Gov. Doc. 5 at ¶ 8(F). Plaintiff's response brief in opposition to the Government's dismissal motion adds that (i) Plaintiff already provided notice to the Bureau of Indian Affairs, (ii) Plaintiff did not discover the alleged "fraud" until 2021, and (iii) the applicable statute of limitations is twelve (12) years as provided by the Federal Quiet Title Act. Gov. Doc. 12 at pp. 12, 16. The court rejects Plaintiff's contention with respect to the Federal Quiet Title Act, which explicitly "does not apply to trust or restricted Indian lands . . . ." 28 U.S.C. § 2409a. Regardless, Plaintiff's position that his claims against the Government accrued in or

around 2021 is flawed and fatal to Plaintiff's effort to overcome dismissal on statute of limitations grounds.

A claim "accrues" for purposes of the FTCA "when all the events have occurred which fix the alleged liability of the United States and entitle the claimant to instate an action." *Comanche Nation v. U.S.*, 393 F. Supp. 2d 1196, 1208 (W.D. Okla. 2005); *see also Impro Prods., Inc. v. Block*, 722 2d 845, 850 (D.C. Cir. 1983) (a cause of action first accrues "when the right to resort to federal court [is] perfected."). Critically, the statute of limitations begins to run when a plaintiff "knew or *should have known*" of the underlying conduct allegedly forming the claim. *San Carlos Apache Tribe v. U.S.*, 272 F. Supp. 2d 860, 896 (D. Ariz. 2003) (emphasis added). Plaintiff's Second Amended Complaint is not altogether clear, but it contains no factual allegations occurring after 1928. Gov. Doc. 5 at ¶ 7. As such, the court finds there is no circumstance in which Plaintiff's claim for "unintentional negligence" can overcome a dismissal motion based on the statute of limitations applicable to the FTCA.

Lastly, the Government argues that even if Plaintiff's claim is construed as one for breach of trust, it is still properly dismissed under the statute of limitations applicable to the Administrative Procedures Act ("APA"). Gov. Doc. 10 at 9. Here, too, the applicable statute of limitations would be six (6) years. 28 U.S.C. § 2401(a). Whether Plaintiff's claim against the Government is construed as negligence or breach of trust, it cannot survive a dismissal motion because the statute of limitations has long passed.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion to remand [Wallace Doc. 9] is **DENIED**, and the Wallaces' and the Government's motions to dismiss [Wallace Doc. 8; Gov. Doc. 10] are **GRANTED**.

**IT IS SO ORDERED** this 30th day of March, 2023.

**THE HONORABLE RONALD A. WHITE**
**UNITED STATES DISTRICT JUDGE**
**EASTERN DISTRICT OF OKLAHOMA**